IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALEX EARL TATE                    *
(AIS # 182349)                    *
        Plaintiff,                *
                                  *
vs.                               * CIVIL ACTION NO.12-00593-WS-B
                                  *
COREY SYKES,                      *
                                  *
        Defendant.                *

## REPORT AND RECOMMENDATION

Plaintiff Alex Earl Tate, an Alabama prison inmate proceeding *pro se* and *in forma pauperis,* filed a complaint seeking relief under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Defendant's Motion for Summary Judgment. (Docs. 32, 34, 36). After careful consideration of the motion, and the documents filed in support of and in opposition to the motion, and for the reasons stated below, the undersigned recommends that Defendant Corey Sykes' Motion for Summary Judgment be granted and that Plaintiff's action be dismissed with prejudice.

## I.   SUMMARY OF FACTUAL ALLEGATIONS

From its review of the record, the Court summarizes the allegations that are material to the issues addressed in this Report and Recommendation. At all times relevant to Plaintiff's complaint, Plaintiff Tate was incarcerated at the Fountain

Correctional Facility ("Fountain") and was serving a thirty-year sentence for robbery in the first degree.[1] (Doc. 1 at 6-7).   In his complaint, Tate alleges that Defendant Sykes, who was then employed as a correctional officer at Fountain, assaulted and injured him.[2] (Docs. 1 at 5; 32-1 at 1).   According to Tate, on December 12, 2011,[3] his uncle, who was also an inmate, awakened him and told him that Defendant Sykes was "walking around with his stick in his hand, circling around [Tate's] bunk," while making a security check in the dorm.  (Doc. 1 at 6).  Sykes asked Tate for his identification and while Tate was reaching for it, Sykes searched his box but did not find any contraband. (Id.).  Tate asserts that while reaching for his pants to get dressed, Sykes placed his arm around Tate's neck, choked him, and began beating him "striking the left side of [his] face and eye multiple times, causing injury and swelling." (Id.).  Tate contends that when he asked Sykes why he beat him, Sykes

---

[1] Plaintiff is currently serving his prison sentence at Decatur Community Work Center.  See http://www.doc.state.al.us/InmateHistory.aspx

[2] The Defendant is currently serving as a correctional officer at Holman Correctional Facility. (Doc. 32-1 at 1).

[3] The Plaintiff states that the altercation occurred on December 12, 2011, however, the records indicate that the incident actually occurred on December 9, 2011.  Therefore, the Court will refer to December 9, 2011 as the date of incident in its Report and Recommendation.

replied, "'the last thing I'm going to do is scar you up, I can do what I want to do, I ware [sic] the blue uniform.'" (Id.). Tate seeks compensation in the amount of $300,000.00 for "assault with injury [and] pain and suffering." (Id. at 8).

In an Answer and Special Report filed with the Court, Defendant Sykes denies Tate's allegations and further denies that excessive force was used against Tate. (See Docs. 31, 32 at 10-12, 32-1, 32-2, 32-3, 32-4, 32-5). In a sworn affidavit, Sykes asserts that on December 9, 2011, at approximately 7:30 a.m., he conducted a search of Tate's bed box. (Doc. 34-2). During the search, Sykes twice instructed Tate to step back so he could conduct the search. At one point, Sykes retrieved a laundry bag from Tate's living space, whereupon, Tate snatched the laundry bag from Sykes' hands and proceeded to swing at Sykes' chest with his left elbow. (Id.). Sykes pushed Tate "away to gain distance and ordered him to step back." (Id.). Tate then bent down and grabbed Sykes and in response, Sykes struck inmate Tate one time in the face with a closed fist and Tate fell back to the bed as a result. (Id.). Sykes held Tate down on the bed and radioed for assistance. Several officers arrived to assist and "Sergeant Drew then escorted inmate Tate to the health care unit for an examination." (Id.).

Both Tate and Sykes received medical attention. (Id.; Doc. 32-3, 4). Tate was examined by the medical staff immediately following the incident. The medical records reflect that on physical examination, Tate's vital signs were within normal limits, his face was red, he was bleeding under his left eye, and he had a laceration 1 and ½ inches long under his left eye. (Id.) Tate does not allege, and the records do not reflect that Tate required stitches or any further medical treatment.

In an Order dated January 13, 2015, the Court converted Sykes' Special Report and Answer into to a Motion for Summary Judgment, explained to the parties the procedure under Federal Rule 56, and afforded the parties an opportunity to respond to the motion. (Doc. 36).  On February 9, 2015, Tate filed a response expressing his desire to continue with the litigation and included an affidavit signed by Jeremy Walker, a fellow inmate. (Doc. 37). In the affidavit, Walker asserts that he witnessed the incident on December 9, 2008 involving Tate and Sykes.[4] (Id. at 2).  According to Walker, he saw Officer Sykes talking "crazy" to Tate, and hit Tate for no reason.  He further asserts that he left and went to the bathroom, and when he

_____

[4] As noted supra, the records indicate that the physical altercation between Tate and Sykes occurred on December 9, 2011, rather than 2008. (Docs. 32-2, 3, 4, 5)

returned, the officers were putting handcuffs on Tate. (Id.).
The Court finds that Syke's motion is now ripe for resolution.

## II.  STANDARD OF REVIEW

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);  see  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986);  Garczynski v. Bradshaw, 573 F.3d 1158, 1165 ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'"(emphasis in original)).

> The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing
that there is a genuine issue for trial.'" Id. at 324.
To avoid summary judgment, the nonmoving party "must
do more than show that there is some metaphysical
doubt as to the material facts." Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586,
106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the
other hand, the evidence of the nonmovant must be
believed and all justifiable inferences must be drawn
in its favor. See Anderson, 477 U.S. at 255.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F.
Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations
omitted).

In considering whether Defendant is entitled to summary
judgment in this case, the Court views the facts in the light
most favorable to Plaintiff. Comer v. City of Palm Bay, Florida,
265 F. 3d 1186, 1192 (11th Cir. 2001) ("We view the evidence and
all factual inferences raised by it in the light most favorable
to the non-moving party, and resolve all reasonable doubts about
the facts in favor of the non-moving party.").

The requirement to view the facts in the nonmoving party's
favor extends only to "genuine" disputes over material facts.  A
genuine dispute requires more than "some metaphysical doubt as
to material facts." Garczynski, 573 F.3d at 1165 (internal
citations omitted).  A "mere scintilla" of evidence is
insufficient; the nonmoving party must produce substantial
evidence in order to defeat a motion for summary judgment. Id.

In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations." (citations omitted) (unpublished)).[5]

## III. DISCUSSION

As a preliminary matter, the undersigned observes that although the Court is required to liberally construe a *pro se* litigant's pleadings, the Court does not have "license to serve

---

[5]   "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." 11th Cir. R. 36-2.

as *de facto* counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), overruled on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010); see also Giles v. Wal-Mart Distrib. Ctr., 359 F. App'x 91, 93 (11th Cir. 2009) (internal citations and quotations omitted) ("Although *pro se* pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally, this liberal construction does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."). Based upon a liberal construction of Tate's complaint, the Court construes his factual allegations as asserting a federal excessive force claim based upon his altercation with Defendant Sykes in December of 2011.

As set forth above, Tate seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of a physical altercation between himself and Defendant Sykes that took place on December 9, 2011, inside of Tate's cell

at Fountain Correctional Facility[6]. (Doc. 1). Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The analysis of an excessive force claim brought under § 1983 begins with determining the specific constitutional right allegedly infringed by the challenged application of force. Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The Eighth Amendment, which attaches "after conviction and sentence," protects

---

[6] Plaintiff Tate is suing Defendant Sykes in his individual capacity. (Doc. 1 at 5-6). "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739), 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). With respect to Tate's excessive force claim, qualified immunity does not apply. See Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002).

incarcerated prisoners, like Tate, from punishment that is "cruel and unusual." Id. at 392 n.6, 394. Specifically, The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). In order to establish an Eighth Amendment excessive force claim against Sykes, Tate must prove both an objective and subjective component. That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that the Defendant "act[ed] with a sufficiently culpable state of mind", i.e., that the defendant acted "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (citations omitted).

Subjectively, Tate must establish that "force was applied. . .maliciously and sadistically to cause harm[,]" as opposed to being applied "in a good-faith effort to maintain or restore discipline[.]" Hudson, supra, 503 U.S. at 7, 112 S. Ct. at 999; see also Whitley v. Albers, 475 U.S. 312, 320-321, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986)("[W]e think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or

10

maliciously and sadistically for the very purpose of causing harm.") In making this determination, the Court considers the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived, any efforts made to temper the severity of a forceful response, and the extent of injury suffered. Hudson, 503 U.S. at 7, 112 S. Ct. at 999, (citing Whitley, 475 U.S. at 321, 106 S. Ct. at 1085); see also Campbell, supra, 169 F.3d at 1375("Hudson and Whitley outline five distinct factors relevant to ascertaining whether force was used 'maliciously and sadistically for the purpose of causing harm': (1) 'the extent of injury'; (2) 'the need for application of force'; (3) 'the relationship between that need and the amount of force used'; (4) 'any efforts made to temper the severity of a forceful response'; and (5) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the reasonable officials on the basis of acts known to them.'").

In the instant case, the evidence is uncontroverted that on the morning of December 9, 2011, Sykes was conducting a legitimate search of Tate's cell for contraband.  In a sworn affidavit, Skye contends, and Tate has not disputed, that twice during the search, Skye directed him to step back for officer security, and Tate failed to do so.  (Doc. 34-1).  While Tate

has presented the affidavit of Walker, a fellow inmate, who asserts that he saw Skye talking "crazy" to Tate, and that Skyes hit Tate for no reason, Walker does not dispute Skye's assertion that twice during the search, Sykes directed Tate to step back, and Tate failed to do so[7]. Additionally, Walker does dispute Skye's sworn assertion that he hit Tate once with his closed fist. Further, the medical evidence reflects that upon a medical examination immediately following the incident, it was noted that Tate sustained a 1 and ½ laceration below his left eye. Tate did not require stiches or any follow-up treatment. Utilizing the Hudson factors, and viewing the uncontroverted facts in the light most favorable to Tate, the undersigned finds that Sykes has met his burden of establishing that he applied a reasonable amount of force in a good faith effort to maintain order during a legitimate search of Tate's cell rather than maliciously and sadistically for the purpose of causing harm. Indeed, while in the complaint, Tate contends that Sykes was armed with a stick while conducting the search, there is no assertion, let alone evidence that Sykes was acting for an improper purpose or that he used the stick during the physical

---

[7] Interestingly, while Walker contends that Skye was talking "crazy" to Tate, he does not detail Sykes' alleged statements to Tate nor does he contend that the search was not being conducted for a valid reason.

confrontation with Tate. Thus, the uncontroverted evidence that Sykes was alone with Tate in the cell attempting to conduct the search, that Tate had disobeyed two orders to step away from Sykes, that Sykes struck Tate one time with a closed fist, as opposed to the stick referenced by Tate, and that Tate sustained de minimis injuries, demonstrates that Sykes did not act maliciously and sadistically for the purpose of causing harm. See Smith v. Sec'y Dep't of Corr., 524 Fed. Appx. 511 (11th Cir. 2013) (where inmate sustained swollen eye after officer twisted his arm and pressed him against the wall to maintain order, officer met his burden of showing no genuine dispute about the use of de minimis use of force and no serious injury, and the plaintiff failed to rebut the showing by pointing to specific facts beyond the pleadings.); Al-AMeen v. Chapman, 2013 U.S. Dist. LEXIS 135777 (M.D. Ala. August 30, 2013)(Although the plaintiff inmate was struck while restrained in handcuffs and wounded with stiches, officer's act of striking inmate one time with a closed fist in the back of head after inmate became loud and disruptive was not "repugnant to the conscience of mankind.")  As courts have aptly noted, a wide range of deference is given to prison officials acting to preserve discipline and security.  Brown v. Smith 813 F. 2d 1187, 1188

(llth Cir. 1987).   Accordingly, Skye's motion for summary judgment on Tate's excessive force claim is due to be granted.

## IV.  CONCLUSION

For the reasons set forth above, the undersigned concludes that Defendant Corey Sykes is entitled to summary judgment in his favor on all claims asserted against him by Tate. Accordingly, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED**, that this action be **DISMISSED** with prejudice, and that judgment be entered in favor of Defendant Corey Sykes and against Plaintiff Alex Earl Tate.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.   An objection that merely incorporates by reference or refers to the briefing before the Magistrate

Judge is not specific.

      **DONE** this **11th** day of **September, 2015.**

                          **/s/ SONJA F. BIVINS**
                         **UNITED STATES MAGISTRATE JUDGE**